IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JUAN GUILLERMO PINEDA<br>Plaintiff<br>vs<br>LOPITO, ILEANA & HOWIE, INC.; DIGITAL AUDIOVISUAL SERVICES, INC.; CARLOS PEPE RODRIGUEZ, in his personal capacity and as the representative of the conjugal partnership constituted between Jane Doe and himself; ABC INSURANCE COMPANY<br>Defendants | CIVIL 06-1397CCC |

**O R D E R**

Before the Court is a Fed.R.Civ.P. 50(a)(1) oral motion submitted by defendants Lopito, Ileana and Howie, Inc. (LIH), Digital Audiovisual Services, Inc. (DAS) and Carlos Pepe Rodríguez on all claims after conclusion of the presentation of plaintiff's evidence. Both parties fully argued for and against the motion. Having considered the evidence and the controlling case law, the Court RULES as follows:

Regarding plaintiff's Title VII claims of unlawful discrimination based on gender and national origin under 42 U.S.C. §2000e, et. seq., and his A.D.E.A. claim of unlawful discrimination based on age under 29 U.S.C. §§621-634, the Court finds that plaintiff has provided a legally sufficient evidentiary basis to place these discrimination claims before the finder of facts.

Regarding the local Law 100 (29 L.P.R.A. §146, et. seq.) claim based on political discrimination, the Rule 50(a)(1) motion is GRANTED as to all defendants. Such motion is DENIED as to the Law 100 discrimination claims based on age and national origin. The Court's ruling on the Law 100 political discrimination will be further discussed below.

The Rule 50(a)(1) motion on plaintiff's local Law 80 claim for unjust dismissal brought under 29 L.P.R.A. §185 is DENIED.

CIVIL 06-1397CCC                                2

The Article 1802 negligence claim under the Puerto Rico Civil Code, 31 LP.R.A. §5141against LIH, DAS and Carlos José Rodríguez (fourth cause of action) for intentional infliction of emotional distress upon plaintiff and for loss of income resulting from his termination is MOOT, since plaintiff in its Motion Complying with Court Order filed on September 17, 2007 (docket entry 72) agreed to withdraw its fourth cause of action or voluntarily accept dismissal thereof since Law 100 allowed him recovery for emotional damages and Law 80 is the exclusive remedy for dismissal-without-just-cause claims.

The Rule 50(a)(1) motion filed by LIH and Carlos José Rodríguez for all claims against them under the A.D.E.A., Title VII, Puerto Rico Law 80 and Puerto Rico Law 100 is GRANTED as to LIH regarding all claims.  As to individual defendant Carlos José Rodríguez, it is GRANTED as to the A.D.E.A., Title VII and Law 80 claims and DENIED as to the Law 100 age and national origin claims of discrimination.

Regarding Law 80, there is no evidence that Mr. Carlos José Rodríguez was plaintiff Juan Guillermo Pineda's employer at any time.  As to the Law 80 claim against LIH, plaintiff contends that both LIH and DAS were his employer during the relevant time period based on the argument that since these two corporations had a same board of directors, common stock holders, one same system of accounting and shared a human resources department, the two corporations were one same entity.  Plaintiff also raises that in a request for admissions the answer provided was that LIH and DAS were his employer.[1]  Plaintiff has not at all discussed the alter-ego theory although his claims of common stock holders, board of directors and other common denominators all point to this theory.

The parties stipulated in the amended Joint Proposed Pretrial Order filed on June 29, 2007 (docket entry 48), at page 19 that: "(1) Mr. Pineda was hired by LIH in 1997.  Mr.

---

[1] Requests for Admissions are not meant as an evidentiary tool to prove core facts in a case, such as the liability of LIH, Inc. as an employer.

CIVIL 06-1397CCC                                            3

Pineda was General Manager of DAS from April 1998 to November 23, 2004." On August 19, 2009, during cross-examination, Mr. Pineda testified that as General Manager of DAS he was responsible to obtain money for the company so that he and the rest of the employees could be paid. He further testified that DAS is a separate corporation from LIH and the finances for each are individual, and that if DAS continued losing money and could not pay the salaries, rent and utilities, it could possibly close down if it did not have other projects. During that same cross-examination, he referred to LIH as his client. Referring during the August 18, 2009 cross-examination to the sum of $53,000.00 due to a weather condition, he explained that the $53,000.00 were really received by LIH, not received by DAS, and that this made a difference because that amount is not reflected in "DAS numbers" but in "LIH numbers."

Exhibit 2 for plaintiff lists LIH and the names of the affiliated companies. Each company has its own social security employer number. Noemí Díaz-Torres, chief financial officer for all of the companies, testified on August 10, 2009 as plaintiff's witness that there is a central financial department and shared resources and that inter-company charges are made for the administrative services provided to the different companies; that LIH invoiced DAS for payroll services and for accounting services and that all companies paid LIH for those services and the cost of the services were reflected in the statement of income and losses of the different companies. She referred to these services as the costs of operation, rent, or other services paid by DAS to LIH such as telephone, cleaning, cafeteria, insurance, and support services for financing and receptionists. She further stated that the charges by LIH regarding services to the different corporations are pre-established, based on a formula discussed with all of the general managers of the companies and that, before they are charged each year, each manager signs a contract regarding the services and determining the charges because those charges are fixed amounts. During direct that same day, she

CIVIL 06-1397CCC                                            4

explained that a checkbook was kept at LIH for all the companies and that all checks required two signatures, one of them being that of the general manager of the corresponding company.

Mr. Pineda acknowledged during cross-examination on August 19, 2009 that his salary check came from DAS and that at the beginning of the year he had to prepare a budget for the board of directors where he included his as well as the salaries of all DAS employees.

Plaintiff has failed to present evidence that could trigger the alter-ego doctrine since, beyond pointing to common stock holders and the sharing of common resources for which the different companies paid their share, he has not shown that LIH controlled the other corporations, that DAS and the other corporations lacked corporate integrity or that they were shells employed by LIH as an artifice or for illegal purposes.  The fact that Mr. Pineda had dual functions as general manager of DAS and as a producer for LIH's creative department for a specified period of time does not justify piercing the corporate veil.

Finally, we reach defendants' Rule 50(1)(a) motion regarding plaintiff Pineda's Law 100 political discrimination claim, which is GRANTED since there is insufficient evidence from which a jury could find that plaintiff's termination was linked to political discrimination. Plaintiff has brought claims under Law 100 based on different types proscribed thereunder, to wit: age, national origin and political discrimination. Complaint's third cause of action, ¶35. As stated in Fontanez v. Wyndham Hotel Corp., 155 D.P.R. 364, 387 (2001), referring to Law 100 claims, "not all discrimination modes are configured by the existence of the same basic facts; each and everyone of the modes in question requires the existence of different basic facts."  Commenting on the concept of presumption, specifically on Rule 13(a) of the Puerto Rico Rules of Evidence, the rule refers to the fact or group of facts previously established as a basic fact while the fact deducted through a presumption is known as the presumed fact.

CIVIL 06-1397CCC                                        5

Turning to the Law 100 rebuttable presumption of discrimination found in its Article 3, 29 L.P.R.A. §148, the Court at page 384 observed: "In order to trigger the presumption of discrimination, the plaintiff employee must prove three elements: (1) that there was a prejudicial termination or action; (2) that it was taken without just cause; (3) evidence must be presented indicating the discrimination mode that is linked to the termination.  It is at that moment that the presumption is triggered."  See also S.L.G. Hernández-Beltrán v. TOLIC, 151 D.P.R. 754 (2000); Belk v. Martínez, 146 D.P.R. 215 (1998).  Referring to the Law 100 presumption, the Court clarified, citing TOLIC, that this statutory provision "does not alter in its entirety the probative scheme that prevails in our jurisdiction, where once a complaint is filed, it is the plaintiff's burden at trial to commence with the presentation of his evidence in support of his allegations before defendant has any obligation to refute it."  The Court made clear  that "[i]f plaintiff, during its case in chief, fails to present sufficient evidence to support its allegations, defendant need not defend himself.  The presumption established by Article 3 is intended to make it easier for the plaintiff employee to prove his claim, not to relieve him of the need and the obligation to present evidence to prove his allegations."  At page 386 of its opinion, the Court reiterated that "the mere allegation of a basic fact, without it having been duly established, does not trigger a presumption that allows for the inference of a presumed fact . . . [o]therwise it would not be possible or reasonable to require that defendant defeat a presumption supported only by an allegation."  The Court highlighted at pages 387 and 388 that "not every unjustified termination is discriminatory . . . yet every discriminatory termination is unjustified.  This is why it becomes necessary for plaintiff who is claiming the remedies and benefits of Law 100 to prove certain basic rights so that the discrimination modality claimed can be configured."

In this case, the plaintiff failed to present sufficient evidence regarding the third element required to trigger the presumption of discrimination under Law 100, that is, he failed

CIVIL 06-1397CCC                                6

to present evidence that political discrimination was linked to his termination. The following testimony of Mr. Pineda demonstrates that this basic fact is lacking.

During the August 18, 2009 session, Mr. Pineda, in direct, gave the following answers to his attorney's questions:

Q. Mr. Pineda, what is your political ideology?

A. None.

Q. Why?

A. Because ever since I arrived in Puerto Rico, I've never had a political ideology.

Q. How long have you felt this way?

A. Ever since I arrived in Puerto Rico.

Q. Any why don't you have a political ideology?

A. Why? Because I don't like it, I've never liked it, I've never been interested in it. It's not a topic that I like to share and I just never have liked politics.

TR., page 2, lines 1-12.

During his cross-examination, he gave the following testimony:

Q. Mr. Pineda, you have no political affiliation, correct?

A. That is correct.

Q. And the person who substituted you, Ms. Juliette Lanauze, you don't know her political affiliation, if she has any, correct?

A. Well, to my understanding, all the work she does for the Popular Party, I would understand that her affiliation is Popular.

Q. Do you know or not?

A. No.

TR., page 1, lines 2-11.

Mr. Pineda's theory regarding political discrimination is based on sheer speculation, that is, he understands that because the person that substituted him, Ms. Juliette Lanauze, worked as a freelance producer during the 2004 gubernatorial campaign of candidate Aníbal

CIVIL 06-1397CCC                                    7

Acevedo-Vilá, she must have been an affiliate of the Popular Democratic Party as the candidate was.  There is no evidence whatsoever of Ms. Lanauze's political affiliation.  Mr. Pineda attempts to equate the work that she did as the producer for the political campaign of candidate Acevedo-Vilá to her political affiliation to his party.  Nor is there any evidence in support of the basic fact that his termination had a connection with political discrimination. Certainly neither Mr. Pineda nor any of his witnesses so testified.  All there is on the record is an argument, not a proven basic fact regarding political discrimination, by plaintiff's attorney during the Rule 50 oral argument.  Asked by the Court time and again to link the termination to the political discrimination modality claimed, he stated that an offer was made to Ms. Lanauze three weeks after election day and the day after plaintiff's termination.  He described that situation envisioned by the employer as:

> . . . This is what we need, we'll have four more years with the PPD governor and here's a person who is close to the PPD governor and he certainly is going to be pleased.  He's pleased that he won the campaign, and she did the campaign commercials and she was the image consultant and bought has clothes and I'm going to have her here.  This is going to be another good four years for the agency.

TR. p. 10., lines 16-22.

All this adds up to is a business judgment in the sense that, Acevedo-Vilá having won the governorship in 2004, the advertising agency understood it would have another good four years regarding government accounts if it retained his former successful campaign consultant, with whom he was pleased, as head of the production house formerly managed by the plaintiff.

Due to the lack of proof regarding the basic fact of the nexus between the dismissal without just cause and the political discrimination claimed, the Law 100 presumption of discrimination was never triggered.  Therefore, according to Wyndham, defendant had

CIVIL 06-1397CCC                                            8

neither the need nor the obligation to defend himself from a political discrimination claim as the basis for Mr. Pineda's termination.

SO ORDERED.

At San Juan, Puerto Rico, on August 25, 2009.

                                                S/CARMEN CONSUELO CEREZO
                                                United States District Judge